UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-227-GWU

MONA CALDWELL,                                                                               PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

Mona Caldwell brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  <u>Id.</u>  Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Caldwell, a former certified nurse's assistant and dry cleaning presser, suffered from impairments related to being status post laminectomy and excision of an L4-L5 synovial cyst, being status post right carpal tunnel release, a pain disorder, and an anxiety disorder. (Tr. 12, 20).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light

6

level work. (Tr. 18). Since the claimant was found capable of returning to her past relevant work, she could not be considered totally disabled. (Tr. 20).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The residual functional capacity assessment determined by the ALJ included an exertional limitation to light level work, restricted from a full range by such non-exertional limitations as (1) an inability to ever climb ladders, ropes or scaffolds; (2) an inability to more than occasionally bend, kneel, stoop, crouch, crawl, balance or climb ramps or stairs; and (3) a limitation to simple or detailed instructions and tasks in a non-public work setting involving no more than occasional, casual contact with supervisors and co-workers. (Tr. 18). These restrictions were presented by the ALJ to Vocational Expert William Ellis who testified that Caldwell's past work as a presser could still be performed. (Tr. 50-51). The ALJ then added a sit/stand option in 30 minute intervals. (Tr. 51). Ellis indicated that the past work could still be done and he also identified a significant number of other jobs which could performed as well. (Id.). The ALJ then added such restrictions as no more than frequent use of hand controls bilaterally, and no more than frequent reaching, pulling, pushing, gripping, or fine gross manipulation with both hands. (Id.). The expert reported that these limitations would also not affect one's ability to perform the previously cited

jobs. (Id.). Finally, the ALJ added an inability to crawl and an inability to more than frequently operate foot controls with the dominant right lower extremity. (Tr. 51-52). Ellis again noted that previously cited jobs could still be performed. (Tr. 52). Therefore, assuming that the vocational factors considered by the expert fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Gary Wortz examined Caldwell and opined that she would have significant impairment in such areas as stooping, bending, sitting, standing, moving about, lifting, carrying, handling objects and traveling. (Tr. 236). Most of these factors are compatible with the ALJ's findings. The ALJ did not find that the plaintiff was impaired in reaching, sitting and standing. However, these restrictions were presented to the vocational expert and he indicated that the past work as well as a significant number of other jobs could still be performed. The court notes that Dr. Wortz saw the claimant on June 30, 2007. This was only ten days after she underwent carpal tunnel release surgery on the right by Dr. James Belhasen and before she underwent surgical release on the left hand in October of 2007. (Tr. 322, 331). This was also before Caldwell underwent a laminectomy and excision of a L4-L5 cyst which occurred in March of 2008. (Tr. 364). Dr. Wortz related these limitations to these conditions which were not

necessarily permanent problems due to the surgeries. Therefore, his opinion provides support for the administrative denial decision.

Caldwell returned to Dr. Belhasen eight days after her surgery for removal of her sutures. (Tr. 320). At that time she was noted to be doing well. No mention of functional restrictions related to carpal tunnel syndrome was reported at this time or when the patient was seen in July or in October of 2007. (Tr. 319-320, 330-331). Surgical release of the left was scheduled for early October, 2007. (Tr. 331). Therefore, this opinion also supports the administrative decision.

Dr. Humilidad Anzures reviewed the record and opined that Caldwell was limited to light level work restricted from a full range by an inability to more than occasionally climb ramps or stairs, stoop, kneel, crouch and crawl and an inability to ever climb ladders, ropes and scaffolds. (Tr. 304-311). The ALJ's findings were consistent with this opinion.

Dr. Brett Muha, Caldwell's family doctor, indicated that she would have "difficulty" standing, sitting, lifting and bending due to back pain and lumbar stenosis. (Tr. 377). The vocational factors considered by Ellis were also essentially compatible with this somewhat vague opinion. Therefore, substantial evidence supports this portion of the administrative decision.

Dr. Muha identified a number of very severe mental problems as well, including a "poor or none" ability to perform at a consistent pace, accept instructions

and respond appropriately to criticism from supervisors, deal with normal work stress, set realistic goals or make plans independently of others, deal with the stress of semi-skilled and skilled work, travel in unfamiliar areas and a "fair" ability to maintain attention for two hour segments, maintain regular attendance and be punctual within customary tolerances, sustain ordinary routine with special supervision, work in coordination or proximity to others without being unduly disturbed, and respond appropriately to changes in a routine work setting. (Tr. 376). Caldwell argues the ALJ erred in rejecting this opinion. However, the ALJ noted a number of reasons why Dr. Muha's opinion was not well-supported. The ALJ noted that Dr. Muha appeared to base his mental limitations primarily on physical problems such as back and leg pain rather than a discrete mental illness. (Tr. 20, 374). The doctor rated the plaintiff's Global Assessment of Functioning (GAF) at 90. (Id.). Such a GAF indicates the existence of only minimal psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34, and is clearly inconsistent with the very severe mental restrictions identified by Dr. Muha. The doctor described the patient's prognosis as "good." (Tr. 375). This would appear inconsistent with the very severe mental limitations later identified.  Therefore, the ALJ had sufficient grounds to reject the opinion of the treating physician.

Psychologist Jeanne Bennett examined Caldwell and diagnosed a chronic pain disorder with psychological features secondary to general medical condition and dysthymia. (Tr. 245). The examiner opined that the plaintiff would experience "moderate" restrictions regarding tolerating work stresses and responding appropriately to supervision, co-workers and work pressures. (Tr. 246). The examiner's limitation concerning work stresses was not included in the hypothetical question. Psychologists Laura Cutler (Tr. 256-257) and Anne Demaree (Tr.293-294) each reviewed the record and opined that the claimant would be "moderately" limited in her ability to interact with the general public and to respond appropriately to changes in the work setting. The reviewer's restriction concerning responding to work changes was not presented to the vocational expert. However, Caldwell was found capable of performing her past relevant work as a presser. Thus, the plaintiff had the burden of showing she could not return to this type of work. The claimant has presented no evidence suggesting that these additional mental limitations would preclude performance of this job. Therefore, any error in the ALJ omitting these factors from his findings would appear harmless.

Caldwell argues that the ALJ did not properly evaluate her subjective pain complaints. Pain complaints are to be evaluated under the standards announced in <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there

must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Caldwell was found to be suffering from a potentially painful condition. However, even if she could be found to have satisfied the first prong of the so-called <u>Duncan</u> test, the claimant does not meet either of the alternative second prongs. A May, 2007 MRI scan of the plaintiff's lumbar spine revealed only mild stenosis at L3-L4 caused by spondylosis. (Tr. 225). A later MRI scan revealed a perineural cyst at L5 on the right. (Tr. 319). Dr. James Bean indicated that the claimant's numbness complaints were not related to this finding. (Id.). Dr. Bean also reported that straight leg raising was negative. (Tr. 239). The physical examination completed by Dr. Wortz revealed no motor or cerebellar abnormalities. (Tr. 235). Pathological reflexes were not detected. (Tr. 237). Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated the claimant's pain complaints.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment

motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 30th day of April, 2010.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**